## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

JUDAH KARKOWSKY,

             *Plaintiff*,

    v.

NASSAU COUNTY; AILEEN E. NEWBOLD;
RICHARD C. LEE; JUAN GIRON; WOODMERE
FIRE DISTRICT; WOODMERE VOLUNTEER
FIRE DEPARTMENT; and RONNA
RUBENSTEIN;

             *Defendants*.

**COMPLAINT**

Case No. 23-5949

Jury Trial Demanded

## JURISDICTION & VENUE

1.      This action arises in part under 42 U.S.C. §§ 1983 and 1988.

2.      Jurisdiction over the claims brought herein is thus conferred on this Court by 28 U.S.C. §§ 1331, 1343, and 1367.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

## PARTIES

4.      **Plaintiff Judah Karkowsky** is a resident of Nassau County and was at relevant times a member of the WVFD and a WFD Commissioner.

5.      **Defendant Nassau County** is a political subdivision of the State of New York.

6.      **Defendants Aileen E. Newbold, Richard C. Lee, and Juan Giron ("the NCPD Defendants")** were at all relevant times detectives for the Nassau County Police Department ("NCPD").

7.      **Defendant Woodmere Fire District ("WFD")** is a municipal fire district and political subdivision of the State of New York having its principal place of business at the Woodmere Fire House, 20 Irving Place, Woodmere, NY 11598.

8.      **Defendant Woodmere Volunteer Fire Department ("WVFD")** is a duly organized volunteer municipal fire department created under and by New York state law that maintains its principal place of business at the Woodmere Fire Department, 20 Irving Place, Woodmere, NY 11598.

9.      **Defendant Ronna Rubenstein** is a resident of Nassau County and has been a member of the WVFD a WFD Treasurer, Secretary, and Commissioner.

10.     The actions alleged within this Complaint by each of the individual Defendants were all taken under the color of state law.

## FACTUAL ALLEGATIONS

11.     Mr. Karkowsky is a trained Emergency Medical Technician ("EMT"), and in 1998, he began serving as a part-time volunteer EMT for the WVFD, where he provided EMS services.

12.     In 2015, Mr. Karkowsky was appointed to fill a vacant position as one of the five Commissioners that constitute the WFD Board, and in 2016, Mr. Karkowsky was elected to a full five-year term as a Commissioner.

13.     In 2020, Defendant Rubenstein began serving as one of his fellow WFD Commissioners, serving alongside other WFD Commissioners, including an individual named Israel Max.

14.     Prior to the events central to this complaint, Defendant Rubenstein and Mr. Max had a pre-existing personal animus and hostility to Mr. Karkowsky due in part to prior complaints Mr. Karkowsky made against them.

15.     For example, in 2018 and 2019, Mr. Karkowsky (along with other WFD Commissioners) accused Defendant Rubenstein of serious financial improprieties concerning her role as a WFD Treasurer (accusations which resulted in her not being reappointed as WFD Treasurer).

2

16.     Additionally, on August 5, 2020, Mr. Karkowsky served Defendant WFD, Defendant Rubenstein, and Mr. Max with a Notice of Claim concerning false and defamatory statements Defendant Rubenstein and Mr. Max had made concerning Mr. Karkowsky.

17.     On August 28, 2021, Defendant WVFD received an emergency call to which Mr. Karkowsky and other WFVD members responded, including ultimately Defendant Rubenstein.

18.     The team was called to a local temple where four children were reportedly stuck in an elevator.

19.     Each of the four were assessed on scene and one of the four, the complaining witness ("CW"), exhibited signs of distress and disorientation.

20.     The WVFD team decided to transport the CW to the hospital, but detoured to his home to speak with his parents.

21.     At the CW's house, the CW's mother instructed the WVFD team to conduct a further examination of the CW before discharging him to her care.

22.     On information and belief, the CW's mother was and remains close friends with Defendant Rubenstein.

23.     According to a subsequently filed misdemeanor complaint, while Mr. Karkowsky was conducting this subsequent medical examination at the CW's house, Mr. Karkowsky supposedly "instructed the male juvenile victim, (DOB is 8/11/08) and whose age is 13 years old, to pull his pants and underwear down.  [Mr. Karkowsky allegedly] then grabbed and began squeezing the victim's testicles for no legitimate purpose.  [Mr. Karkowsky allegedly] stated, 'I'm sorry I have to do this but it's what firemen have to do.'"

24.     The foregoing was not true; Mr. Karkowsky did not instruct the CW to pull down his pants or underwear, nor did he make any contact with the CW's testicles.

3

25.     Mr. Karkowsky's examinations of the CW were entirely proper, routine, and consistent with appropriate medical practices, Mr. Karkowsky's training as an EMT, and the needs of the attendant circumstances.

26.     Ultimately, however, a false account of the incident was reported to the NCPD, led by false reports made or caused to be made by Defendant Rubenstein.

27.     NCPD investigative documents reveal that an attorney acting on behalf of Defendant Rubenstein was the "source" of the allegations against Mr. Karkowsky.

28.     Specifically, on September 2, 2021, the attorney acting on behalf of Defendant Rubenstein made a "law enforcement referral" concerning the August 28, 2021 incident to the New York State Department of Social Services Child Abuse "Hotfile," in which he identified himself as an "attorney representing alternate EMT," which, on information and belief, refers to Defendant Rubenstein.

29.     That referral falsely accused Mr. Karkowsky of "sexual assault" in connection with his August 28th examination of the CW.

30.     On September 8, 2021, NCPD detectives spoke with the attorney who made the referral, who again was purporting to act as an attorney for Defendant Rubenstein in her capacity as a WFD Commissioner, and the attorney again reported a false and incriminating account of Mr. Karkowsky's examination of the CW.

31.     On September 9, 2021, Defendant Rubenstein personally made a subsequent "law enforcement referral" concerning the August 28th incident to the New York State Department of Social Services Child Abuse "Hotfile," in which she identified her agency as "Woodmere Fire Department," and listed the WFD's address and phone number as her contact information.

32.     That report also falsely relayed the events of the August 28th incident.

33.     On information and belief, Defendant Rubenstein made other false and defamatory statements to NCPD detectives, the CW, the CW's mother, and others regarding the circumstances of Mr. Karkowsky's examination of the CW in order to corruptly initiate and influence the outcome of the investigation and/or to harm Mr. Karkowsky and his reputation.

34.     Defendant Rubenstein did not have a good-faith or reasonable basis to believe that Mr. Karkowsky had committed the acts she ascribed to him, which formed the basis for his arrest and prosecution.

35.     Defendant Rubenstein knew her reports to law enforcement concerning Mr. Karkowsky's conduct on August 28th were false, and she made those reports maliciously and with personal animus towards Mr. Karkowsky in order to intentionally harm him.

36.     As alleged above, each of Defendant Rubenstein's foregoing actions were undertaken in connection with her role as a WFD Commissioner and member of the WVFD.

37.     As a direct result of the efforts of Defendant Rubenstein, Mr. Karkowsky was arrested on September 23, 2021 and a misdemeanor complaint, signed by Defendant Newbold, was filed in the District Court of the County of Nassau the following day.

38.     It charged Mr. Karkowsky with two crimes:  (i) Sexual Abuse in the Second Degree, NYPL § 130.60(2) and (ii) Endangering the Welfare of a Child, NYPL § 260.10(1).

39.     Both charges ultimately were dismissed in their entirety several months later when the Court, with the consent of the People, granted Mr. Karkowsky's motion to dismiss the accusatory instrument on May 6, 2022.

40.     There was never probable cause that Mr. Karkowsky committed either of the two offenses for which he was charged (or any other crime).

41.     On its face, the complaint was defective and did not make out probable cause because

5

there was no factual allegation that Mr. Karkowsky's alleged touching of the CW's testicles (which, again, Mr. Karkowsky itself denies) would have been outside the bounds of a routine medical procedure as would be required to support either charge.

42.     In any event, the sole identified eyewitness to the alleged misconduct, the CW, had made statements that the detectives knew refuted the allegations against Mr. Karkowsky and that they knew or should have known lacked credibility.

43.     Further, on information and belief, the detectives (and/or those acting at their direction) used improperly suggestive tactics to coach the CW to make certain potentially inculpatory statements that were false and which the detectives knew or should have known were false.

44.     The complaint, which was prepared and signed by Defendant Newbold, also contained statements that the detectives knew or should have known were false, including but not limited to the CW's supposed statement that the CW never told Mr. Karkowsky that he was experiencing stomach pain, even though the CW was recorded saying just that in prior statements.

45.     Further, prior to Mr. Karkowsky's arrest, an independent review of the incident conducted by the WFD's own medical director, Dr. Steven Greenstein, based upon numerous witness interviews, including of an EMT eyewitness who was in the room during the examination of the CW conducted by Mr. Karkowsky at the CW's mother's house, formally concluded as follows:

> [B]ased on the statements and evidence I have available to me at this time, I have no credible evidence to support the allegations against EMT Karkowsky. From the PCT, phone interview and submitted incident statements, EMT Karkowsky appeared to be responding appropriately using his training to medical complaints.

46.     Despite having reported Mr. Karkowsky to law enforcement, Defendant Rubenstein refused to provide a statement or otherwise participate in Dr. Greenstein's review.

47.     Every other member of the WVFD who was involved in the August 28th call except

for Defendant Rubenstein participated in Dr. Greenstein's review and provided a detailed statement.

48.     None of those statements remotely supported the allegations in the complaint.

49.     Defendants Newbold, Lee, and Giron knew or should have known about all the above evidence that exonerated Mr. Karkowsky, including but not limited to all of the evidence in Dr. Greenstein's report.

50.     On information and belief, none of the NCPD Defendants contacted any of the witnesses who gave statements in connection with Dr. Greenstein's report.

51.     Nevertheless, disregarding that evidence and inexcusably failing to conduct any further investigation of the exonerating information, the NCPD Defendants arrested Mr. Karkowsky, or caused his arrest, knowing they lacked probable cause to support his arrest and prosecution.

52.     Representatives of the NCPD, as well as the WFD and WVFD, defamed Mr. Karkowsky by publicizing false allegations of his alleged misconduct in a widely circulated press release and in other statements.

53.     The arrest of Mr. Karkowsky and its wide publication, as well as his months-long prosecution, caused significant harm to Mr. Karkowsky.

54.     Mr. Karkowsky satisfied all conditions precedent to filing this lawsuit, as construed by applicable statutory and case law.

## CAUSES OF ACTION

### COUNT I – False Arrest Under 42 U.S.C. § 1983
### (Brought against All Individual Defendants)

55.     Mr. Karkowsky repeats each allegation above as if set forth herein.

56.     By way of the foregoing, the NCPD Defendants and Defendant Rubenstein intended to confine Mr. Karkowsky by way of an arrest for alleged criminal conduct, and such an arrest took place on September 23, 2021.

57.     Defendant Rubenstein, with the intent that Mr. Karkowsky be arrested, made false statements to the police that led to Mr. Karkowsky's arrest on September 23, 2021.

58.     Defendant Rubenstein's statements to the police caused Mr. Karkowsky's arrest.

59.     Mr. Karkowsky was conscious of his confinement when he was arrested on September 23, 2021.

60.     Mr. Karkowsky did not consent to his confinement on September 23, 2021.

61.     Mr. Karkowsky's confinement was not privileged because none of the Defendants had probable cause to believe that he had committed a crime.

### COUNT II – Malicious Prosecution Under 42 U.S.C. § 1983
### (Brought against All Individual Defendants)

62.     Mr. Karkowsky repeats each allegation above as if set forth herein.

63.     By way of the foregoing, the Defendants each initiated or caused the initiation and continuation of criminal proceedings against Mr. Karkowsky.

64.     Each Defendant played an active role in the prosecution.

65.     Through the foregoing, Defendants caused Mr. Karkowsky to be deprived of his liberty.

66.     The termination of that criminal proceeding ended in Mr. Karkowsky's favor.

67.     There was no probable cause to initiate or continue a prosecution of Mr. Karkowsky.

68.     Each Defendant acted with malice.

### COUNT III – Malicious Prosecution Under NY State Law
### (Brought against All Defendants)

69.     Mr. Karkowsky repeats each allegation above as if set forth herein.

70.     By way of the foregoing, the Defendants each initiated or caused the initiation and continuation of criminal proceedings against Mr. Karkowsky.

71.     Each Defendant played an active role in the prosecution.

8

72.     Through the foregoing, Defendants caused Mr. Karkowsky to be deprived of his liberty.

73.     The termination of that criminal proceeding ended in Mr. Karkowsky's favor.

74.     There was no probable cause to arrest or prosecute Mr. Karkowsky.

75.     Each Defendant acted with malice.

76.     The NCPD Defendants' actions (and inactions) were taken in the scope of their employment with Nassau County and thus Nassau County is vicariously liable for the harms caused by their tortious conduct, including but not limited to under the theory of *respondeat superior*.

77.     Defendant Rubenstein's actions (and inactions) were taken in the scope of her role as a WFD Commissioner and/or member of the WVFD and thus the WFD and WVFD are vicariously liable for the harms caused by her tortious conduct, including but not limited to under the theory of *respondeat superior*.

### COUNT IV – Denial of Liberty, Due Process, and a Fair Trial Under 42 U.S.C. § 1983 (Brought against All Individual Defendants)

78.     Mr. Karkowsky repeats each allegation above as if set forth herein.

79.     The individual Defendants, individually, acting in concert, and/or aiding and abetting one another, deliberately, willfully, recklessly, and/or with deliberate indifference to the truth, manufactured false evidence against Mr. Karkowsky, including but not limited to an allegedly inculpatory statement from the CW as well as the criminal court complaint.

80.     The false evidence was material to Mr. Karkowsky's prosecution in that it was the only evidence of guilt, and it was reasonably likely to have influenced a jury to convict Mr. Karkowsky.

81.     Defendant Rubenstein forwarded, or caused to be forwarded, or aided and abetted the forwarding of, this false evidence to the NCPD, and the NCPD Defendants forwarded, or caused to

be forwarded, or aided and abetted the forwarding of, this false evidence to the Nassau County DA's office.

82.     The individual Defendants knew that the evidence they had fabricated and caused to be transmitted to the NCPD and/or NCDA's office was likely to influence the decision by officers and prosecutors whether to arrest or prosecute Mr. Karkowsky, the decision by the court concerning the conditions of Mr. Karkowsky's pre-trial release, and the decision by a jury whether to convict him.

83.     The fabricated evidence was a substantial and proximate cause of Mr. Karkowsky's deprivation of liberty and other injuries.

84.     The prosecution ended in Mr. Karkowsky's favor.

### COUNT V -- Defamation Under NY State Law
### (Brought against All Defendants)

85.     Mr. Karkowsky repeats each allegation above as if set forth herein.

86.     Defendants made or caused to be made false statements to the police, the prosecutor's office, the media, and/or members of the public accusing Mr. Karkowsky of committing a crime and engaging in wrongdoing with the CW.

87.     Defendants made these reports maliciously.  They knew the reports were false and/or they made them with reckless disregard for their truth and/or with gross negligence.

88.     The NCPD Defendants' actions (and inactions) were taken in the scope of their employment with Nassau County and thus Nassau County is vicariously liable for the harms caused by their tortious conduct, including but not limited to under the theory of *respondeat superior*.

89.     Defendant Rubenstein's actions (and inactions) were taken in the scope of her role as a WFD Commissioner and/or member of the WVFD, and thus the WFD and WVFD are vicariously liable for the harms caused by her tortious conduct, including not limited to under the theory of

*respondeat superior*.

**COUNT VI – Negligent Infliction of Emotional Distress Under NY State Law**
**(Brought against All Defendants)**

90.     Mr. Karkowsky repeats each allegation above as if set forth herein.

91.     Each Defendant owed a duty to Mr. Karkowsky to refrain from arresting and prosecuting him without probable cause (and/or causing same), a duty which they breached; each Defendant also had a special relationship with Mr. Karkowsky.

92.     Defendants' breach unreasonably endangered Mr. Karkowsky's safety, including but not limited to leading to a deprivation of his liberty.

93.     Defendants' breach involved extreme and outrageous conduct.

**COUNT VII – Negligent Hiring, Training, Supervision, and Retention Under NY State Law**
**(Brought against WFD & WVFD)**

94.     Mr. Karkowsky repeats each allegation above as if set forth herein.

95.     The WFD and the WVFD, on the one hand, and Defendant Rubenstein, on the other hand, were at all relevant times in an employer-employee and/or principal-agent relationship.

96.     The WFD and WVFD each knew or should have known of Defendant Rubenstein's propensity for the conduct which caused Mr. Karkowsky's injuries.

97.     Defendant Rubenstein's misconduct was committed while performing her duties for the WFD and WVFD.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Karkowsky prays for relief and demands judgment in his favor on each of his claims against Defendants as follows:

(a)     Declaring and adjudging that Defendants' acts alleged herein violated Mr. Karkowsky's rights under the laws and constitutions of the State of New York and of the United States;

(b)     Entering judgment in favor of Mr. Karkowsky and order that Mr. Karkowsky shall recover (i) compensatory damages against each of the Defendants, jointly and severally, to compensate Mr. Karkowsky for his past, present, and future pain, suffering, and other hardships arising from the Defendants' conduct; and (ii) punitive damages against each of the Defendants;

(c)     Awarding Mr. Karkowsky the costs of the suit herein, including but not limited to attorney's fees pursuant to 42 U.S.C. § 1988.

(d)     Granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 4, 2023

By: _____

Michael L. Bloch

_____

Benjamin D. White

**BLOCH & WHITE LLP**
Michael L. Bloch, Esq.
Benjamin D. White, Esq.
Cristina Alvarez, Esq.
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 901-3825
mbloch@blochwhite.com
bwhite@blochwhite.com
calvarez@blochwhite.com

*Attorneys for Plaintiff*

_____

Joel B. Rudin

**LAW OFFICES OF JOEL B. RUDIN, P.C.**
Joel B. Rudin, Esq.
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com